UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-2242(DSD/FLN)

Charles E. Bethel II and
Jennifer Kalsow Frantz,

       Plaintiffs,

v.                                           **ORDER**

Darwin Select Insurance Company,

       Defendant.

    Adam P.F. Gislason, Esq. and Snyder, Gislason and Frasier, LLC, 233 Park Avenue South, Suite 205, Minneapolis, MN 55415, counsel for plaintiffs.

    Amy J. Woodworth, Esq. and Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, counsel for defendant.

    This matter is before the court upon the motion for summary judgment by defendant Darwin Select Insurance Company (Darwin) and motion for partial summary judgment by plaintiffs Charles E. Bethel, II and Jennifer Kalsow Frantz. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion by Darwin.

**BACKGROUND**

    This insurance-coverage dispute arises from Darwin's refusal to defend plaintiffs in a professional liability lawsuit. In 2005, nonparty Trent C. Jonas formed Zen Title, LLC, a Minnesota-based title insurance company. Compl. ¶ 1. Bethel and Frantz worked at

Zen Title, and each was a minority stockholder. Id. ¶ 2. From May 2006 to August 2007, Zen Title issued title insurance and received and managed funds associated with mortgage financing on behalf of United General Title Insurance Company (United General). Id. ¶ 3.

In May 2007, Darwin issued professional liability insurance (the Policy) to Zen Title. See Gislason Aff. Ex. A. The Policy provided coverage for "loss and defense expenses ... from any claim first made against the insured and reported to the insurer during the policy period ... for a professional services wrongful act." Id. § I(A).[1] A professional services wrongful act is defined as any "[n]egligent act, error, omission, misstatement, misleading statement, neglect or breach of duty." Id. § III(S)(1). The Policy, however, excluded coverage (Customer Funds Exclusion) for any

> loss and defense expenses, from any claim or disciplinary proceeding based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving ... any actual or alleged ... *loss, disappearance, pilferage or shortage of, or commingling or improper use of, or failure to properly segregate or safeguard, any client or customer funds, monies or securities*, including any loss resulting from computer theft, computer virus or any electronic transfer or from the insolvency, receivership, bankruptcy or liquidation of any business or organization in which the insured has placed or invested such funds.

---

[1] All defined terms are bolded and capitalized in the Policy. For clarity and ease of reading, the court removes this emphasis.

Id. § IV(B)(6)(a) (emphasis added).

In August 2007, United General filed suit in Minnesota court against, among others, Zen Title, Jonas, Bethel and Frantz (Underlying Action). Compl. ¶ 4. On November 9, 2007, United General filed a first amended complaint, alleging that "Zen [Title] has failed to record (and pay associated recording fees for) numerous residential mortgages ... [and] failed in at least nine (9) instances to use escrowed funds ... to pay off refinanced mortgages." Gislason Aff. Ex. B, ¶ 1. Based on these claims, United General alleged breach of contract; fraud, deceit, and breach of fiduciary duties; conversion; deceptive trade practices; replevin; and negligence. Id. ¶¶ 25-54. Zen Title notified Darwin of the Underlying Action, and Darwin denied coverage. Id. ¶ 35.

On February 18, 2009, Bethel and Frantz entered into a settlement agreement with United General, agreeing to pay $100,000 and $500,000, respectively. Gislason Aff. Ex. F. Neither Bethel nor Frantz "admit[ted] to any liability and in fact expressly den[ied] the same." Id.

On September 16, 2009, Zen Title initiated a declaratory judgment action against Darwin in Minnesota court. See Doran Aff. Ex. I. Bethel and Frantz intervened on November 16, 2010. See Gislason Ex. G. On February 23, 2011, the declaratory judgment action was dismissed for failure to prosecute, but the claims by Bethel and Frantz were dismissed without prejudice. Id. Ex. H.

On August 5, 2011, Bethel and Frantz initiated the present action against Darwin in Minnesota court, alleging breach of contract and breach of the duty of good faith and fair dealing. Bethel and Frantz also seek a declaration that Darwin was obligated to defend the Underlying Action.  Darwin timely removed and seeks a declaration that it had no duty to defend.  Both parties move for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See

Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Breach of Contract**

"An insurer's duty to defend an insured is contractual."[2] Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 415 (Minn. 1997) (citation omitted). An insurer has a duty to defend "when any part of the claim against the insured is arguably within the scope of protection afforded by the policy." Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 407-08 (Minn. 1998). To determine whether a duty to defend exists, the court compares the allegations "in the complaint and amended complaint in the underlying action with the relevant language in the [insurance policy]." Ross v. Briggs & Morgan, 540 N.W.2d 843, 847 (Minn. 1995) (citations omitted).

---

[2] "The duty to defend is different from and broader than an insurer's duty to indemnify." Murray v. Greenwich Ins. Co., 533 F.3d 644, 648 (8th Cir. 2008) (citing SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 316 (Minn. 1995)).

Whether a duty to defend exists is a question of law. See Auto-Owners Ins. Co. v. Todd, 547 N.W.2d 696, 698 (Minn. 1996). "The insurer claiming it has no duty to defend has the burden of showing each claim asserted in the lawsuit clearly falls outside the policy." Murray v. Greenwich Ins. Co., 533 F.3d 644, 648 (8th Cir. 2008) (citing Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 165 (Minn. 1986)). "If the complaint alleges several causes of action, and one of the claims, if established, would require the insurer to indemnify, the insurer must provide a defense against all claims." Id. (citation omitted). Doubts as to the scope of coverage are resolved in favor of the insured. See Franklin, 574 N.W.2d at 407.

**A.   Funds Invested in Business Entities**

Plaintiffs argue that the Customer Funds Exclusion applies only to funds that were invested with other business entities. Specifically, plaintiffs argue that the amended complaint in the Underlying Action does not allege that funds were invested in another business organization, and thus the Customer Funds Exclusion does not apply.

In Minnesota the interpretation of an insurance policy is a question of law. Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001). The court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins.

6

Co., 641 N.W.2d 877, 879 (Minn. 2002). The court gives unambiguous language its plain and ordinary meaning, and construes ambiguous language against the drafter and in favor of the insured. Id. at 880; Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, the court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006) (citation and internal quotation marks omitted).

The Customer Funds Exclusion contains an operative clause and a list of examples that are excluded from coverage.[3] See Gislason Aff. Ex. A, § IV(B)(6)(a). The last example in the Customer Funds Exclusion exempts coverage for any loss resulting from "insolvency, receivership, bankruptcy or liquidation of any business or organization in which the insured has placed or invested such funds." Id. Plaintiff argues that the language "business or

---

[3] The operative clause and examples are separated by the word "including." "It is hornbook law that the use of the word 'including' indicates that the specified list ... that follows is illustrative, not exclusive." P.R. Mar. Shipping Auth. v. ICC, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981); see also Christensen v. Harris Cnty., 529 U.S. 576, 583 (2000) (noting that expression of one example does not suggest exclusion of others when context does not indicate exhaustive list). As a result, the court does not consider the examples contained in the Customer Funds Exclusion to be an exhaustive list.

organization in which the insured has placed or invested such funds" applies to the entire Customer Funds Exclusion and not to only those losses resulting from "insolvency, receivership, bankruptcy or liquidation."  The court disagrees.

The last antecedent rule explains that qualifying words and phrases usually apply only to the words or phrases immediately preceding or following them, and not to others that are more remote. Barnhart v. Thomas, 540 U.S. 20, 26 (2003). And "[w]hile [the last antecedent rule] is not an absolute and can assuredly be overcome by other indicia of meaning ... construing a [contract] in accord with the rule is quite sensible as a matter of grammar." Id. (citation and internal quotation marks omitted). Use of this canon of construction is sensible given that under plaintiffs' interpretation, a loss would be excluded if the funds are placed or invested in another business entity, but not if they are kept by the insured.  Such a conclusion is illogical. See Brookfield Trade Ctr. v. Cnty. of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998) (citation omitted) (explaining that court "will not construe the terms [of a contract] so as to lead to a harsh and absurd result"). As a result, the last antecedent rule counsels against plaintiffs' interpretation.

Plaintiffs next argue that their interpretation is proper because the additional policy exclusions contained in the same subparagraph all pertain to losses resulting from money invested in

other business entities. See Gislason Aff. Ex. A, § IV(B)(6)(b)-(d). Even if plaintiffs' assertion was true, the court would not consider such extrinsic evidence; the Customer Funds Exclusion is not ambiguous. See Phelps v. Commonwealth Land Title Ins. Co., 537 N.W.2d 271, 274 (Minn. 1995) ("Where the intention of the legislature is clearly manifested by plain unambiguous language ... no construction is necessary or permitted."); Horodenski v. Lyndale Green Townhome Ass'n, 804 N.W.2d 366, 371 (Minn. Ct. App. 2011) (citation omitted) (noting that statutory and contract interpretation follow the same rules of construction). Therefore, the Customer Funds Exclusion is not limited to funds placed or invested in other business entities.[4]

### B. "arising out of"

Plaintiffs next argue that Darwin had a duty to defend because the amended complaint contains a claim for negligence. Specifically, plaintiffs argue that the Customer Funds Exclusion does not encompass negligence claims, and thus Darwin had a duty to defend all claims in the amended complaint. Darwin responds that the correct inquiry is not what causes of action were asserted in

---

[4] Plaintiffs, in a one sentence argument relegated to a footnote, also argue that a contrary interpretation would render two other exclusions redundant. See Gislason Ex. A, § IV(A)(1)-(2). The court disagrees.

9

the amended complaint, but whether these claims "arise out of" United General's allegation that plaintiffs wrongfully diverted funds.

"The phrase 'arising out of' has been given broad meaning by Minnesota courts." Murray v. Greenwich Ins. Co., 533 F.3d 644, 649 (8th Cir. 2008). "[T]he policy term 'arising out of' means originating from, or having its origin in, growing out of, or flowing from." Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos., 229 N.W.2d 516, 518 (Minn. 1975) (citation and internal quotation marks omitted). In other words, "'[b]ut for' causation, a cause and result relationship, is enough to satisfy the ['arising out of'] provision[] of the policy." Progressive Cas. Ins. Co. v. Brockway, 411 N.W.2d 13, 16 (Minn. Ct. App. 1987) (citation omitted).

Plaintiffs argue, however, that the Customer Funds Exclusion only exempts claims arising out of the improper use of "client or customer funds, monies, or securities." Gislason Aff. Ex. A., § IV(B)(6). Because the amended complaint contained allegations that Bethel and Frantz failed to record mortgage and closing documents, plaintiffs argue that coverage was owed. See id. Ex. B, ¶¶ 18-20, 49-54. Darwin responds that such a piecemeal parsing of United General's amended complaint is improper. The court agrees.

In determining the scope of the "arising out of" policy language, the court should not "attempt to 'isolate' events for

10

coverage purposes," but rather should "look to the 'overall intentional plan' of the insured." Auto-Owners Ins. Co. v. Todd, 547 N.W.2d 696, 699 (Minn. 1996) (citation omitted). In the Underlying Action, United General alleged that Bethel and Frantz "deliberately chose to delay the recordings so as to benefit from the pool of cash escrowed for the purpose of paying recording fees." Gislason Aff. Ex. B, ¶ 19; see id. ¶ 1 ("[United General] terminated Zen when it discovered that Zen had failed to record (and pay associated recording fees for) numerous residential mortgages."). In other words, the failure to record mortgage and closing documents was "inextricably linked" to the improper use of funds. Auto-Owners Ins. Co., 547 N.W.2d at 699. "But for" the plaintiffs' failure to pay recording fees and properly use escrowed funds, there would have been no claim. Therefore, summary judgment in favor of Bethel is warranted.

**III.  Duty of Good Faith and Fair Dealing**

"Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." In re Hennepin Cnty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995) (citations omitted). Plaintiffs allege a breach based on Darwin's refusal to defend. Compl. ¶ 63. As already explained, plaintiffs' claim for breach of contract

11

fails, and no coverage was owed in the Underlying Action. Therefore, plaintiffs' duty of good faith and fair dealing claim fails, and summary judgment is warranted.

**IV. Declaratory Judgment**

Both parties seek a declaration of their rights under the Policy. As already explained, Darwin had no duty to defend and, in turn, no duty to indemnify plaintiffs. Therefore, a declaratory judgment in favor of Darwin is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for partial summary judgment [ECF No. 15] is denied; and

2. Defendant's motion for summary judgment [ECF No. 9] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 25, 2012

s/David S. Doty
David S. Doty, Judge
United States District Court